UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL MCGRATH

Plaintiff,

-against-

MARILYN ARROYO, STEVEN RUSSO, JAMES
LEONARD, DANIEL NIGRO, MAYOR BILL
DEBLASIO, THE FIRE DEPARTMENT OF THE
CITY OF NEW YORK, and THE CITY OF NEW
YORK,

Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-1461 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Michael McGrath brings this action against Defendants Marilyn Arroyo, Steven

Russo, James Leonard, Daniel Nigro, Mayor Bill DeBlasio, (collectively, the "Individual

Defendants"), the Fire Department of the City of New York (the "FDNY"), and the City of New

York (the "City"). (See Am. Compl. (Dkt. 32).) Plaintiff asserts causes of action pursuant to: (i)

the anti-discrimination provisions found in Title VII of the Civil Rights Act of 1964, as amended

("Title VII"); (ii) the anti-discrimination provisions found in the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101, et seq.; (iii) Title VII's anti-retaliation provisions; (iv) Sections

1981, 1983, 1985 and 1986 of Title 42 of the United States Code; (v) the First Amendment of the

United States Constitution; (vi) Section 29 of the New York Human Rights Law ("NYHRL")

and §§ 40-c & 40-d of the New York Civil Rights Law ("NYCRL"); (vii) Section 8-107 of the

New York City Human Rights Law ("NYCHRL"); (viii) state law tortious interference with

contract; (ix) state law intentional infliction of emotional distress; and (x) state law breach of

contract.

Before the court is Defendants' motion to dismiss. (Mot. to Dismiss (Dkt. 39); Defs.

Mem. of Law in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 40)). For the following reasons,

Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Allegations

The court takes the following statement of facts from Plaintiff's amended complaint, the

well-pleaded allegations of which the court generally accepts as true for purposes of a motion to

dismiss. See N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

At all relevant times, Defendant Mayor Bill DeBlasio was the mayor of the city of New

York (Am. Compl. ¶ 14), and Defendant Daniel Nigro was the FDNY Commissioner (id. ¶ 13).

Plaintiff Michael McGrath had a long career with the FDNY. (See id. ¶¶ 33-50.) At the

beginning of the alleged incidents, Plaintiff was Battalion Commander of Battalion 47, meaning

he was "in charge of all FDNY resources in the Rockaways." (Id. ¶ 45.) In 2005, FDNY moved

Emergency Medical Services ("EMS") into the firehouse where Plaintiff worked (the

"Firehouse"). (See id. ¶ 51.) The complaint alleges that there are no written procedures for how

"fire personnel should interact" with EMS. (Id. ¶ 55.)

#### 1.    Plaintiff's Allegations Against Arroyo

In January 2014, Plaintiff and Defendant Marilyn Arroyo met at the scene of an accident

that involved an EMS FDNY vehicle. (Id. ¶ 63.) At that time, Arroyo worked for FDNY EMS.

(See id. ¶¶ 63-65.) In the following months, Plaintiff and Arroyo interacted professionally and

sometimes discussed personal topics. (See, e.g., id. ¶¶ 64, 66, 68, 69, 70, 72.) For a few months,

Arroyo worked out of another EMS location, but she rotated back to the EMS station at the

Firehouse in the spring of 2014. (Id. ¶¶ 71, 72.) Plaintiff and Arroyo continued to converse

occasionally (id. ¶ 74), including at a barbecue Arroyo attended at Plaintiff's house in July 2014 (id. ¶¶ 80, 82). They discussed both personal and professional matters at the barbecue and continued to do so in subsequent months. (Id. ¶¶ 82-83.)

Plaintiff alleges that, in or about July 2014, Arroyo was having sex in the Firehouse with a firefighter stationed there. (Id. ¶ 77.) Plaintiff did not know about it at the time. (Id.) In January 2015, Plaintiff "began hearing numerous detailed accounts that Arroyo had sex with" a firefighter in the Firehouse. (Id. ¶ 84.) A different firefighter later informed Plaintiff that he had walked in on Arroyo and a firefighter having sex in the steam room of the men's bathroom in the Firehouse. (Id. ¶¶ 116-22.) In March 2015, the wife of a firefighter in the Firehouse approached Plaintiff in a restaurant and told Plaintiff she knew about Arroyo "having sex in the firehouse." (Id. ¶ 86.) Plaintiff alleges that he also heard that "Arroyo kissed her Firefighter boyfriend on the lips at the scene of the fire where [a] civilian fatality had occurred." (Id. ¶ 93).

Plaintiff decided action must be taken because, if these rumors were true, Arroyo's conduct would be "a violation of FDNY policies and procedures." (Id. ¶ 87.) The day after the complaint in the restaurant, Plaintiff met with Arroyo's supervisor, Defendant EMS Chief Steven Russo, to discuss Arroyo having sex in the Firehouse. (Id. ¶ 89.) Russo said "he would look into it and get back to [Plaintiff]" but Russo did not "get back to him." (Id. ¶ 90.) Because Russo allegedly did not investigate the allegations against Arroyo, Plaintiff decided to "conduct an investigation." (Id. ¶¶ 94-95.) He spoke with Arroyo about the allegations. (Id. ¶¶ 95-96.) The firefighter with whom Arroyo allegedly had sex "did not work in [Plaintiff]'s command," so Plaintiff contacted Assistant Chief Edward Baggott and Division Commander James DiDomenico. (Id. ¶ 100.) Plaintiff alleges, upon information and belief, that Baggott then contacted the Bureau of Investigations and Trials ("BITs") to determine how to proceed. (Id.

¶ 102.) Later the same day, DiDomenico advised Plaintiff that BITs was not going to investigate Arroyo's behavior. (Id. ¶ 103.) Plaintiff alleges that "BITs chose not to act on the allegations" because Arroyo is Hispanic and female. (Id. ¶ 104.)

2.     FDNY's Investigation of Plaintiff

On or about March 27, 2015, Plaintiff was moved to the Queens Borough Command. (Id.) Plaintiff alleges he was "stripped of his duties" (id. ¶ 111), and that he was not told "why he was being moved or for how long" (id. ¶ 112). In his new position, Plaintiff was not fighting fires. (Id. ¶ 113.) Instead, he was "relegated to sitting at a desk . . . and creating a newsletter once a month." (Id.) "At some point after being removed from his firehouse, someone from the Uniformed Fire Officers Association" told Plaintiff they heard Arroyo filed a claim of harassment (id. ¶ 132), and Plaintiff alleges, upon information and belief, that "these actions were taken against [him] because he is a Caucasian (white) who investigated allegations of wrongdoing against Arroyo who is Hispanic and a female" (id. ¶ 114). Plaintiff further alleges that his complaints about Arroyo were ignored because he is a white man, while Arroyo's complaints were investigated because she is "Hispanic and a Female." (Id. ¶ 115.)

On November 24, 2015, Plaintiff received a "Notice of Investigation," which informed him that a "female subordinate" had filed "an allegation against him." (Id. ¶ 133.) Plaintiff "was not notified in writing . . . who made the allegation against him as required by policy." (Id. ¶ 136.) On January 6, 2016, Plaintiff alleges that he was interview by the FDNY EEO[1] about the allegations against him. (Id. ¶ 139.) After the interview, Plaintiff alleges that he was "kept in the dark for months." (Id.)

---

[1] The complaint does not define "EEO." The court presumes that Plaintiff uses the acronym to refer to the FDNY Equal Employment Opportunity Office, and, in any event, will use the acronym as it appears in the complaint.

On May 16, 2016, Plaintiff "filed a complaint with the New York State Division of Human Rights [("SDHR")] and the United States Equal Employment Opportunity Commission [("EEOC")], as well as an internal FDNY EEO complaint." (Id. ¶ 141.) FDNY continued its investigation of Arroyo's allegations after Plaintiff filed his complaints with SDHR, EEOC, and FDNY EEO. (Id. ¶ 141.) FDNY informed Plaintiff that they would "not investigate his claims" because he had "filed a complaint with the SDHR." (Id. ¶ 146.) Plaintiff alleges, however, that FDNY "ignor[ed Plaintiff's] complaints . . . because he is a Caucasian/White Male." (Id. ¶ 148.) Plaintiff also claims that the decision to continue investigating the claims against him was in violation of FDNY policy, which states that "investigations must be completed within 90 calendar days." (Id. ¶ 142.) On July 7, 2016, FDNY EEO conducted another interview of Plaintiff, during which they placed Plaintiff under oath, a procedure which Plaintiff alleges was also a violation of FDNY policy. (Id. ¶ 151.) On August 15, 2016, Plaintiff received word from FDNY EEO that "the allegations against him were substantiated" and that he would be referred for discipline. (Id. ¶ 154.)

At some point,[2] someone from UFOA allegedly told Plaintiff he needed to admit to various allegations against him, including that he was "dating" Arroyo, that firefighters had been talking about Arroyo having sex in the firehouse, and that he told another firefighter to "break up with" Arroyo. (Id. ¶¶ 159-60.) Plaintiff refused to do so. (Id. ¶ 161.) A few days later, Assistant Chief Edward Baggott, allegedly the "fifth highest uniformed officer of the FDNY," told Plaintiff that "someone in Headquarters told him to tell [Plaintiff] to [admit to the allegations.]" (Id. ¶ 162.) Plaintiff alleges, on information and belief, that this message came

---

[2] The Amended Complaint reads August 2015, but based on this paragraph's location in the narrative and the substance of the paragraph, the court believes that Plaintiff may be referring to August 2016.

from Defendant Department Chief James Leonard. (Id. ¶ 165.) This made Plaintiff feel

threatened and intimidated. (Id. ¶ 164.) Someone from the firefighters' union also called

Plaintiff to say that "leadership from FDNY" told him to "take the 'deal' and that, if he did not,

FDNY would 'go after'" him. (Id. ¶ 166.) On September 9, 2016, Plaintiff was served with

"charges." (Id. ¶ 155.)

### 3. Plaintiff's Disability Pension

Plaintiff "suffers from various medical issues including asthma, sinus congestion,

gastroesophageal reflux disease, and PTSD as a result of his recovery work at the World Trade

Center [] following the September 11, 2001 terrorist attacks. (Id. ¶ 176.) He also suffers from

"various medical issues, including disabling orthopedic infirmities, stemming from fighting

fires." (Id. ¶ 177.) In April 2017, Plaintiff "applied for accident disability retirement" from the

FDNY, but was told he would not be allowed to collect his disability pension because of the

ongoing investigation of his conduct towards Arroyo. (Id. ¶¶ 178-79.) Plaintiff also alleges,

upon information and belief, that the FDNY "continued to drag out the investigation against

[him] . . . to keep him from receiving his disability pension." (Id. ¶ 183.)

While Plaintiff was on medical leave,[3] BITs "continuously" asked him to "appear for

interviews and a 'Step 1 Hearing.'" (Id. ¶ 196.) Plaintiff alleges that these requests violated

FDNY policy because people "on medical leave cannot be required to appear for . . . interviews

or hearings." (Id. ¶ 197.) Plaintiff's health allegedly suffered as a result of the investigation and

denial of benefits, and he chose to retire. (Id. ¶¶ 202-03.) After Plaintiff retired, he went to the

medical board, seeking disability pension. (Id. ¶ 184.) His request was denied, despite other

people with lesser disabilities allegedly having their requests approved. (Id. ¶¶ 185, 187.)

---

[3] The Amended Complaint does not identify the time period that Plaintiff was on medical leave.

### 4.    Additional Alleged Retaliation Against Plaintiff

On August 13, 2016, the Plaintiff performed an off-duty rescue, and Chief DiDomenico recommended Plaintiff for a Class 3 award.[4] (Id. ¶¶ 169-70.)  Although Plaintiff alleges that DiDomenico's recommendations have always been granted, Plaintiff's was told he would receive a Class A award, which is less prestigious than a Class 3 award.[5]  (Id. ¶ 172.)  On March 15, 2017, Plaintiff filed his complaint in this court (Compl. (Dkt. 1)); on May 5, 2017, he was told he would not receive any medal or award at all (Am. Compl. ¶ 173).  Plaintiff alleges that he was not awarded his recommended medal as retaliation for filing his complaint.  (Id. ¶ 175.)

On November 1, 2017, FDNY transferred Arroyo to a station "within a quarter of a mile of where [Plaintiff] lives." (Id. ¶ 188.)  Plaintiff alleges that Arroyo was transferred to this location "[i]n a further act of retaliation" against him.  (Id. ¶ 190.)  Some time in November 2017, Plaintiff saw Arroyo in a convenience store and left without speaking to her.  (Id. ¶ 191.)  Then, on November 24, 2017, FDNY informed Plaintiff "he was being investigated for engaging in 'retaliatory activities' against Arroyo" and BITs requested to interview Plaintiff.  (Id. ¶ 193.)  As a result, Plaintiff allegedly "lived in constant fear that if he encountered her or if she was in his presence he would be falsely accused of 'retaliation'" and thus chose not to leave his home on "many days." (Id. ¶ 194.)    Plaintiff did not leave his home to pick up medications, "had to reschedule plans to make purchases," and gave up "his routine walks on the beach." (Id. ¶ 201.)

### B.    Procedural History

On May 16, 2016, Plaintiff filed a verified charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in connection with his

---

[4] A Class 3 Award results in the service member being "honored on Medal Day." (Am. Compl. ¶ 170.)

[5] A Class A award does not result in being honored on Medal Day.  (Am. Compl. ¶ 172.)

employment with Defendants the City, FDNY, DeBlasio, and Nigro. (Am. Compl. ¶ 1). On December 19, 2016, the EEOC issued a notice of right to sue. (Id. ¶ 2.)

On March 15, 2017, Plaintiff filed his complaint in this court against Defendants the City, FDNY, DeBlasio, and Nigro. (Compl.) On January 17, 2018, Plaintiff filed a charge of disability discrimination with the EEOC, and the EEOC issued a notice of right to sue on February 28, 2018. (Am. Compl. ¶¶ 5-6.) On May 30, 2018, with leave of the court, Plaintiff filed his Amended Complaint, asserting twenty causes of action. (Am. Compl.)

On February 15, 2019, the Defendants submitted a fully briefed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mem.; Pl. Mem. in Opp'n to Defs. Mot. to Dismiss ("Opp'n") (Dkt. 42); Defs. Reply Mem. in Supp. of Mot. to Dismiss ("Reply") (Dkt. 44).)

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. To decide Defendants' motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiff's] favor." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibl[y] give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. Even when, before discovery, "facts are peculiarly

8

within the possession and control of the defendant," the complaint must still provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

### A. Title VII Employment Discrimination Claim (Count Five)

Plaintiff names Defendants DeBlasio, Leonard, and Nigro (collectively, the "Supervisory Defendants"), as well as FDNY and the City, as Defendants in Count Five. (Am. Compl. ¶ 233-44.)

In a Title VII employment discrimination case, a plaintiff must "prove that the employer-defendant acted with discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015). However, at the motion to dismiss stage, the plaintiff need only plead facts that make a prima facie case of discrimination plausible. Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 84 (2d Cir. 2015). More specifically, "what must be plausibly supported by facts alleged in the complaint is that [(1)] the plaintiff is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311.

Defendants do not dispute whether Plaintiffs have sufficiently alleged the first two elements. (See Mem.) The court will therefore address only elements three and four: adverse employment action, and motivated by discriminatory intent. See Littlejohn, 795 F.3d at 311.

1.    Adverse Employment Action

*A. Legal Standard*

For the purpose of a Title VII discrimination claim, an adverse employment action occurs when a plaintiff "endures a materially adverse change in the terms and conditions of employment." Vega, 801 F.3d at 85 (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quotation marks omitted)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85 (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)). An adverse employment action must be more than a "mere inconvenience" or "alteration of job responsibilities." Id.

"[A]n involuntary transfer may constitute an adverse employment action" if the transfer "'created a materially significant disadvantage' with respect to the terms of [the plaintiff's] employment." Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (Sotomayor, J.) (quoting Galabya, 202 F.3d at 641). A transfer is "an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." Galabya, 202 F.3d at 641. However, "[i]f a transfer . . . involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the . . . transfer an adverse employment action." R.H. Donnelly, Corp., 368 F.3d at 128 (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 n.6 (10th Cir. 1998) (alteration adopted)).

An employer's investigation of an employee arising out of allegations of discrimination or harassment filed against that employee is not inherently an adverse employment action. See

Cox v. Onondaga Cty. Sheriff's Dep't, 760 F.3d 139, 146 (2d Cir. 2014) (stating that an employer's investigation is not in itself grounds for Title VII retaliation claim). This is because refusing to investigate an accusation of discrimination or harassment could, in fact, make an employer liable for that discrimination or harassment. See Malik v. Carrier Corp., 202 F.3d 97, 105 (2d Cir. 2000) ("[A]n employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer.") Therefore, "the law must give breathing room for such investigations to be carried out." Cox, 760 F.3d at 146.

### B. Application

Defendants assert that Plaintiff was not subject to any adverse employment action. (See Mem. at 8.) As to Plaintiff's argument that being the subject of an investigation constitutes an adverse employment action, Defendants point out that the FDNY EEO was required by law to investigate Arroyo's sexual harassment claim. (Id. at 12). And Defendants claim that Plaintiff's transfer to the Queens Borough station was not an adverse employment action because (1) Plaintiff "retained his rank, position responsibilities, and seniority" and (2) an employee's subjective negative view of his transfer does not make a that transfer an adverse employment action. (Id. at 8.)

Plaintiff responds that he was "stripped of his duties" in his new job assignment. (Opp'n at 7.) He points to the complaint's allegations that his new assignment was "less prestigious [and] materially less suited to his skills and expertise" than his previous assignment, and states that the transfer amounted to "severe professional . . . trauma." (Opp'n at 6.) According to Plaintiff, the transfer therefore constituted an adverse employment action. (Id.) In addition, Plaintiff claims that the charges brought against him as a result of the sexual harassment

investigation "tarnished his reputation," and that they also constituted an adverse employment action. (Opp'n at 7.) Finally, Plaintiff characterizes the FDNY's failure to award him the medal that Chief DiDomenico recommended he receive as an adverse employment action. (Id. at 8.)

Plaintiff has alleged sufficient facts to support his claim that his reassignment to the Queens Borough Command constituted an adverse employment action. In his new position, Plaintiff alleges that his job description changed entirely, and that he was "relegated to sitting at a desk every day and creating a newsletter once a month" (Am. Compl. ¶ 113) despite "not want[ing] a desk job" (id. ¶ 41 (emphasis removed)). Plaintiff's transfer therefore created "a materially adverse change in the terms and conditions of [his] employment," Vega, 801 F.3d at 85 (quoting Galabya, 202 F.3d at 640 (internal quotation marks omitted)).

However, the investigation of Arroyo's sexual harassment claim was not an adverse employment action. An organization must be able to, and is frequently legally required to, investigate allegations of sexual harassment. See, e.g., Malik, 202 F.3d at 105. The fact of such an investigation is not an adverse employment action for the purposes of an employment discrimination claim. Cox, 760 F.3d at 146. Nor does not being awarded a medal rise to the level of an adverse employment action, because this singular withdrawal of an award did not materially change Plaintiff's conditions of employment. See Vega, 801 F.3d at 85 (quoting Galabya, 202 F.3d at 640); cf. Cunningham v. N.Y. State Dep't of Labor, 326 F. App'x 617, 619 (2d Cir. 2009) (holding that "(1) unfounded charges of time abuse; (2) reassignment from a fifth-floor office to a first-floor office, where plaintiff's staff was located; (3) opposition . . . to hiring plaintiff's son in a summer job; (4) discontinuing a training conference organized by plaintiff; and (5) excluding plaintiff from a Welfare-to-Work conference and from a decision to hire an outside consultant," considered individually or in the aggregate, did not amount to adverse

12

employment actions (internal quotation marks and citations omitted)); Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 721 (E.D.N.Y. 2015) (explaining that without "demotion, reduction of pay, or reduction of job responsibilities . . . constant insults and comments" did not amount to an adverse employment action for the purposes of a discrimination claim); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment." (internal citation omitted)).

> 2.  Motivated by Discriminatory Intent

Since Plaintiff was subject to an adverse employment action, the court will also address the "motivation" element of an employment discrimination claim.

### A. Legal Standard

Under Title VII, a plaintiff "need not allege" that the adverse employment action would not have happened "but-for" the discriminatory motive. Vega, 801 F.3d at 86. For liability to arise under Title VII, "race, color, religion, sex, or national origin" need only be a "motivating factor" in the adverse employment action; in other words, the employment decision need only be motivated "in part" by a discriminatory reason. Id. at 86-87. To survive a motion to dismiss, a plaintiff must have "minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311.

A plaintiff may support a claim that his employer's actions were motivated by discriminatory intent by "present[ing] evidence that an employer departed from its usual employment practices and procedures in dealing with [the plaintiff.]" Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 97 (2d Cir. 1999). "However, the mere fact that an employer failed to

follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent." Iscenko v. City of New York, No. 16-CV-6535 (LGS), 2017 WL 2880553, at *5 (S.D.N.Y. July 5, 2017) (quoting Harris v. Niagara Mohawk Power Corp., 252 F.3d 592, 599 (2d Cir. 2001) (quotation marks omitted)).

### B. Application

Defendants argue that Plaintiff has not sufficiently alleged that their actions were motivated, even in part, by the fact that Plaintiff is a white man. (Mem. at 11.) Plaintiff responds that FDNY's deviations from department policy regarding investigations—the duration of the EEO investigation, the lack of opportunity to respond to allegations against him, and questioning him under oath—are sufficient to allege that Defendants' actions were motivated by discriminatory intent. (Opp'n at 9-10.)

To succeed on this claim, Plaintiff must allege facts showing that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Vega, 801 F.3d at 87. But Plaintiff has raised no allegations indicating that Plaintiff's transfer to Queens Borough Command—the only adverse employment action for the purpose of Plaintiff's Title VII discrimination claim—was motivated by his race or gender. Plaintiff has alleged that FDNY deviated from procedure by interviewing Plaintiff under oath and asking him to come in for interviews while on medical leave. (Am. Compl. ¶¶ 151, 196-97.) But while the fact that an "employer departed from its usual employment practices" can be evidence of discriminatory motive, Norville, 196 F.3d at 97, Plaintiff has failed to allege facts demonstrating that FDNY's deviations from procedure were related to his transfer. See, e.g., Iscenko, 2017 WL 2880553, at *5 ("Even assuming that the NYPD deviated from established procedures when it investigated and charged Plaintiff, the Complaint fails to allege any facts that plausibly give rise to the

14

minimal inference that the NYPD did so at least in part because of Plaintiff's race."); Santiago v. City of New York, No. 05-CV-3668 (RRM), 2009 WL 935720, at *9 (E.D.N.Y. Mar. 31, 2009) ("[A] violation of procedure . . . is insufficient to support an inference that plaintiff was [discriminated against on] account of her race, gender, color, national origin, or status."); Torres-Sylvan v. Am. Civil Liberties Union, No. 01-CV-0343 (DAB), 2005 WL 1719788, at *10 (S.D.N.Y. July 22, 2005) (explaining that an employer's deviation from procedure was not enough to establish discriminatory intent because there was no indication that following the procedure would have led to a different outcome).

For the foregoing reasons, the Defendants' motion to dismiss Plaintiff's Title VII employment discrimination claim is GRANTED.

### B.    Title VII Hostile Work Environment Claim (Count Six)

Plaintiff names the City, FDNY, and the Supervisory Defendants in Count Six.  (Am. Compl. ¶¶ 245-49.)

#### 1.    Legal Standard

In order to establish a hostile work environment under Title VII, a plaintiff must allege:

> [C]onduct (1) that is "objectively" severe or pervasive—that is, it creates an environment that a reasonable person would find hostile or abusive [the "objective requirement"], (2) that the plaintiff "subjectively perceive[s]" as hostile or abusive [the "subjective requirement"], and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) [the "prohibited causal factor requirement"].

Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (alterations in original) (internal citations omitted)).

With respect to the objective requirement, a plaintiff must show that the defendant's conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." Harris, 510 U.S. at 21 (internal quotation marks and citation omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Id. "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014) (quotation marks and citation omitted).

To determine whether an incident or series of incidents is severe or pervasive, "courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23). "While a single act of harassment, if severe enough, can establish a hostile work environment, lesser incidents 'must be sufficiently continuous and concerted in order to be deemed pervasive.'" O'Neal v. State Univ. of N.Y. Health Sci. Ctr. Brooklyn, No. 01-CV-7802 (DGT), 2003 WL 1524664, at *7 (E.D.N.Y. Mar. 24, 2003) (quoting Carrero v. N.Y.C. Housing Auth., 890 F.2d 569, 577 (2d Cir. 1989) (citation omitted)).

2.    Application

Defendants argue that Plaintiff has failed to plead facts amounting to "harassment" or a "pervasive" hostile work environment, and, moreover, that there are no alleged facts indicating that Defendants took any actions because Plaintiff is white or a man. (Mem. at 18.) They also point out that Plaintiff's transfer can be explained by FDNY's desire to separate Plaintiff from Arroyo while her sexual harassment claim against him was ongoing. (Id.)

16

Plaintiff responds that the following facts all amount to a hostile work environment: that he was transferred to another firehouse; that his complaints of discrimination were ignored; that other employees asked him what happened; and that he was pressured to admit to "fabrications." (Opp'n at 20.) In the context of his constructive discharge claim (see below), Plaintiff also alleges that being commanded to appear for interviews and a Step 1 hearing constituted harassment. (Am. Compl. ¶¶ 196-97.) Plaintiff states that he "lived in daily fear" of the consequences of leaving his home. (Opp'n at 21; see also Am. Compl. ¶ 195.)

These incidents do not create an objectively abusive working environment. See, e.g., Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (dismissing the plaintiff's hostile work environment claim when she alleged "numerous incidents of unfair treatment," including that her employer "wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); Davis-Molinia v. Port Auth. of N.Y. & N.J., No. 08-CV-7584 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (dismissing a hostile work environment claim when the plaintiff described being excluded from staff meetings, being assigned menial tasks, having coworkers avoid her or speak to her in mean ways, being assigned diminished work responsibilities, being yelled at and talked down to, and having her work reassigned to other people), aff'd, 488 F. App'x 530 (2d Cir. 2012) (summary order); Peralta v. Roros 940, Inc., 72 F. Supp. 3d 385, 395 (E.D.N.Y. 2014) ("In claiming a hostile work environment, plaintiff [asserts] . . . episodes of name-calling (heard secondhand), undue reprimands, perceived animosity, and unwelcome work assignments. This alleged pattern of behavior . . . does not exhibit the severity or pervasiveness of an actionable hostile work environment."). Based on this high standard for an objectively hostile work

environment, no facts alleged in the complaint, if proved, amount to a work environment "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment." See Harris, 510 U.S. at 21.

Defendants' motion to dismiss Plaintiff's hostile work environment claim is therefore GRANTED.

### C. Title VII Employment Discrimination (Constructive Discharge) (Count Sixteen)

Plaintiff names the City, FDNY, and the Supervisory Defendants as Defendants in Count Sixteen, alleging that he was constructively discharged from his position with the FDNY. (Am. Compl. ¶¶ 315-19.) "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (internal quotation marks and citation omitted).

The bar for constructive discharge claims under Title VII is higher than that for hostile work environment claims, so "pleadings that fail to pass muster under the less rigorous standard [of a hostile work environment] must also be found inadequate under the more demanding one]." Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014). Therefore, a court's dismissal of a plaintiff's hostile work environment claim necessitates the dismissal of a plaintiff's constructive discharge claim. See Swiderski v. Urban Outfitters, Inc., No. 14-CV-6307 (JPO), 2017 WL 6502221, at *13 (S.D.N.Y. Dec. 18, 2017) (noting that the standard for constructive discharge "is even more demanding than that required to prevail on a hostile environment claim"); Trinidad v. N.Y. Dep't of Corr., 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006) ("[C]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case [under Title VII]." (citation omitted)).

18

Accordingly, Defendants' motion to dismiss Plaintiff's constructive discharge claim is GRANTED.

**D.      Sections 1981 and 1983 Claims (Counts One and Two)**

Plaintiff brings claims against the City, FDNY, and the Individual Defendants under 42 U.S.C. §§ 1981 and 1983. (Am. Compl. ¶¶ 206-20.)

A § 1981 claim is more difficult to make out than a Title VII claim because "[a] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional [while Title VII can be premised on negligence]." Id. at 226.

"[A] plaintiff's §1983 employee discrimination claim," however, "parallels his Title VII claim, except that he may bring a § 1983 claim against an individual." Vega, 801 F.3d at 88. Therefore, "[f]or a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" Id. Moreover, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." Patterson, 375 F.3d at 225.

Because Plaintiff has failed to allege sufficient facts to support a Title VII employment discrimination claim, his §§ 1981 and 1983 claims are also dismissed. Defendants' motion to dismiss Plaintiff's § 1981 and § 1983 claims is therefore GRANTED.

**E.      Section 1985 Claim (Count Three)**

Plaintiff brings his § 1985 claim against Arroyo and Russo. (Am. Compl. ¶¶ 221-26.) To succeed in a § 1985 claim, the Plaintiff must show the following:

> "(1) a conspiracy; (2) for the purposes of depriving a person or class of persons the equal protection of the laws, or the equal

19

privileges and immunities under the laws; (3) an overt act in
furtherance of the conspiracy; and (4) an injury to the plaintiff's
person or property, or a deprivation of a right or privilege of a
citizen of the United States."

Cox v. Onondaga Cty. Sheriff's Dep't, No. 08-CV-387, 2012 WL 1069053, at *10 (N.D.N.Y.

Mar. 29, 2012) (citations omitted), aff'd, 760 F.3d 139 (2d Cir. 2014). To survive a motion to

dismiss for a "§ 1985 [claim], a plaintiff must provide some factual basis supporting a meeting of

the minds, such that defendants entered into an agreement, express or tacit, to achieve the

unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (quotation marks and citation

omitted). If a plaintiff only alleges "any such meeting of the minds" in a "conclusory fashion,"

then the "conspiracy allegation must . . . fail." Id. at 111.

Plaintiff has failed to allege any concrete facts that even hint at a conspiracy, explicit or

implicit, between any of the Defendants. Plaintiff alleges only that "Defendants[] Arroyo and

Russo[] conspired to and did deprive Plaintiff of his right[s]" (Am. Compl. ¶ 223), and that

"Arroyo and Russo[] were conspirators" (id. ¶ 225). There are no other alleged facts that could

plausibly support an inference of conspiracy. As Plaintiff has provided only conclusory

allegations of conspiracy, his conspiracy allegation must fail. See Webb, 340 F.3d at 111.

Defendants' motion to dismiss Plaintiff's § 1985 claim is therefore GRANTED.

### F.     Section 1986 Claim (Count Four)

Plaintiff brings his § 1986 claim against the City, FDNY, and the Supervisory

Defendants. (Am. Compl. ¶¶ 227-32.) Section 1986 imposes liability on parties who know "of

the wrongs [defined by § 1985] conspired to be done . . . and having power to prevent or aid in

preventing . . . neglect[] or refuse[] to do so." 42 U.S.C. § 1986. "[A] § 1986 claim is

contingent upon a valid § 1985 claim." J.L. v. E. Suffolk Boces, 113 F. Supp. 3d 634, 647

(E.D.N.Y. 2015) (citing Wang v. Miller, 356 F. App'x 516, 517 (2d Cir. 2009)).

Because Plaintiff has failed to allege a valid § 1985 claim, his § 1986 claim also fails. Defendants' motion to dismiss Plaintiff's § 1986 claim is GRANTED.

### G.  Title VII Retaliation (Counts Seven and Fifteen)

Plaintiff names the City, FDNY, and the Supervisory Defendants as Defendants in Counts Seven and Fifteen. (Am. Compl. ¶¶ 250-54, 310-14.) As an initial matter, "individuals are not subject to liability under Title VII." Wrighten v. Glowski, 232 F.3d 119, 119 (2d Cir. 2000) (per curiam) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995)). The court therefore dismisses Plaintiff's Title VII retaliation claims against the Supervisory Defendants.

To establish a Title VII unlawful retaliation claim against the City and FDNY, Plaintiff must show "(1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (quotation marks and citation omitted). If the employer puts forward a non-retaliatory reason for the employment action, the plaintiff must then provide evidence that the non-retaliatory reason is a mere pretext for retaliation. See id. at 845. Ultimately, a plaintiff asserting a Title VII retaliation claim must show that retaliation was a "but-for" cause of the adverse employment action. See Univ. of Tex. SW. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

### 1.  Protected Activity

Under Title VII, protected activity includes both "opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Title VII's antiretaliation provision is "construed to cover a

broad range of employer conduct." Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 172 (2011).

For a complaint to qualify as a protected activity, an employee need not lodge a formal complaint of discrimination. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection."); Bennett v. Hofstra Univ., 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (noting that Title VII does not require a formal complaint). However, such complaints cannot be so vague or generalized that the employer could not "reasonably have understood[] that the plaintiff's complaint was directed at conduct prohibited by Title VII." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011) (alteration adopted) (citation omitted).

Plaintiff claims that his reporting of Arroyo's alleged sexual activities in the Firehouse amounted to a protected activity. (Opp'n at 12.) He is incorrect. Though "informal complaints to supervisors" can constitute protected activities, Martin v. State Univ. of N.Y.,704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010), the complaint must still be directed at "conduct prohibited by Title VII," Rojas, 660 F.3d at 108 (emphasis removed) (quoting Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998)). Arroyo's alleged sexual activities are not conduct prohibited by Title VII, so Plaintiff's complaints about Arroyo are not protected activities.

Defendants do not dispute that Plaintiff filing a complaint with the FDNY EEO (Am. Comp. ¶ 144), the U.S. EEO, and SDHR (id. ¶ 146) and filing his complaint in this court (id. ¶ 3) were protected activities. (See Mem. at 12.) These were "complaint[s] . . . directed at conduct

[that, if proven, would be] prohibited by Title VII." Rojas, 660 F.3d at 108 (quoting Galdieri-Ambrosini, 136 F.3d at 292).

2. Adverse Employment Action

"[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). This covers a broader range of employer activities than those covered by Title VII discrimination claims. See id. For a retaliation claim, the adverse action need not impact the terms and conditions of employment. See id.

When an employer "undertakes a factfinding investigation" in response to a complaint, that factfinding investigation is not itself grounds for a retaliation claim. See Cox, 760 F.3d at 146-47. "Indeed, . . . the law must give breathing room for such investigations to be carried out." Id. at 146; see also Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568-70 (2d Cir. 2011) (stating that factfinding investigations that could lead to disciplinary action are not inherently retaliatory); Jaeger v. N. Babylon Union Free Sch. Dist., 191 F. Supp. 3d 215, 228 (E.D.N.Y. 2016) ("[I]nvestigations alone are not adverse employment actions.") However, disciplinary charges or actions resulting from an investigation may qualify as retaliation. See Monclova v. City of New York, No. 05-CV-3164 (DGT), 2008 WL 822117, at *7 (E.D.N.Y. Mar. 26, 2008) ("[D]isciplinary charges against plaintiffs are . . . an adverse employment action for the purpose of making out a prima facie case of retaliation . . . [because] charges of this sort can have significant future consequences for employment and could reasonably dissuade an employee from raising a claim of discrimination.")

Plaintiff has alleged facts that, if true, meet the standard for retaliation claims, including that his discrimination claim was ignored (Am. Compl. ¶¶ 145-46); that he was denied a prestigious medal he would otherwise have received (id. ¶ 173); and that he was denied a disability pension (id. ¶ 178-79). These are all things that "could well dissuade a reasonable worker from making or supporting a charge of discrimination," see Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 57), and therefore constitute adverse employment actions.

    3.    Causal Connection Between Adverse Action and Protected Activity

In order to survive a motion to dismiss, "a plaintiff must plausibly plead a connection between the [adverse employment action] and his engagement in protected activity." Vega, 801 F.3d at 90. "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Id. (citing Nassar, 570 U.S. at 362).

"[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (quoting Gorman-Bakos v. Cornell Coop. Extension of Schenectady, 252 F.3d 545, 554 (2d Cir. 2001)). However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

Plaintiff alleges that FDNY EEO told him that because he filed a claim with SDHR, FDNY EEO would not investigate his claims. (Am. Compl. ¶ 139.) Plaintiff also claims that the

close timing between the protected activities (FDNY EEO, EEOC, and SDHR complaints) and the adverse employment actions establishes a causal connection between the two. (Opp'n at 13.) In particular, Plaintiff notes that he was required to appear for an interview just weeks after he submitted his complaints to FDNY, EEOC, and SDHR. (Am. Compl. ¶¶ 144-45.) Further, Plaintiff was informed that he would no longer receive a medal for his off-duty rescue less than two months after filing his complaint in this court. (Id. ¶¶ 3, 173.) Defendants argue, however, that this timing is insufficient to establish retaliatory but-for causation. (Mem. at 12.) They emphasize that the investigation of Arroyo's sexual harassment claim began well before the Plaintiff filed his EEOC, SDHR, and FDNY EEO claims. (Id. at 13.)

The court finds that Plaintiff has alleged facts that make it plausible that some of the adverse employment actions would not have happened but for Plaintiff's protected activities. Plaintiff alleges "he was told that, because he filed a complaint with the SDHR, the FDNY EEO would not investigate his claims." (Am. Compl. ¶¶ 145-46.) This is sufficient to make it plausible that his filing of a claim with SDHR was a cause of FDNY EEO's refusal to further investigate Plaintiff's complaint filed with that office.

Plaintiff has also plausibly alleged a causal connection between Plaintiff filing his complaint in this court and being denied the medal he was recommended to receive. Seven weeks after filing his complaint in this court, Plaintiff was informed he would not receive any medal. (Id. ¶ 173.) This adverse action—plausibly sufficient to "dissuade a reasonable worker from making . . . a charge of discrimination," Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 57)—"closely followed in time" Plaintiff's filing of discrimination claims, Gorzynski, 596 F.3d at 110 (quoting Gorman–Bakos, 252 F.3d at 554). Therefore, Plaintiff's allegations plausibly support retaliatory but-for causation for at least for the removal

of Plaintiff's recommended medal. See Cifra 252 F.3d at 217 (noting that temporal proximity can establish a causal connection between a protected activity and an adverse employment action).

For the foregoing reasons, Plaintiff has successfully alleged facts making each element of a retaliation claim plausible. Therefore, Defendants' motion to dismiss Plaintiff's Title VII retaliation claims as to Defendants the City and FDNY is DENIED and, as to the Supervisory Defendants, is GRANTED.

### H.     ADA Claim (Count Eighteen)

Plaintiff brings his ADA claim against all Defendants. (Am. Compl. ¶¶ 325-33.) A plaintiff asserting discrimination under the ADA must show:

> (1) [T]he defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability.

Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).

Plaintiff alleges that he suffered disability discrimination because FDNY asked him to appear for a hearing while he was on medical leave (Am. Compl. ¶ 196), and because it denied him his disability pension (Opp'n at 22; see also Am. Compl. ¶ 179). Defendants contend, however, that Plaintiff has not alleged facts indicating that Defendants took any action because Plaintiff was disabled. (Mem. at 31.) Defendants also point out that Plaintiff himself stated that his disability pension was denied because "of the contrived charge and ongoing extreme prejudice and biased investigation against him." (Am. Compl. ¶ 179; see Mem. at 31-32.) As Defendants note, this is a reason not based on Plaintiff's disability.

Defendants are correct that Plaintiff has not alleged facts that support even a minimal inference of discrimination motivated by Plaintiff's disability. Therefore, Defendants' motion to dismiss Plaintiff's ADA claim is GRANTED.

## I. New York State Executive Law Article 15 (NYHRL), and NYCRL §§ 40-c & 40-d (Counts Eight and Nineteen)

Plaintiff names all Defendants in Counts Eight and Nineteen. (Am. Compl. ¶¶ 255-64, 315-19.) Plaintiff brings his NYHRL claim under § 296, which defines "unlawful discriminatory practice[s]" in the state of New York. N.Y. Exec. Law § 296. "New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII." Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999). Additionally, "[f]acts sufficient to sustain a cause of action under [NYHRL §] 296 will support a cause of action under [§] 40-c of the [NYCRL]."[6] Hyman v. Cornell Univ., No. 15-CV-792, 2017 WL 1194231, at *10 (N.D.N.Y. Mar. 30, 2017), aff'd, 721 F. App'x 5 (2d Cir. 2017) (quoting Ganzy v. Allen Christian Sch., 995 F. Supp. 340, 350 (E.D.N.Y. 1998)).

Plaintiff has failed to make out employment discrimination, hostile work environment, and constructive discharge claims under Title VII for discrimination based on race or gender, so he likewise fails to make out an employment discrimination case under NYHRL and NYCRL. See Leopold, 174 F.3d at 264 n.1.

However, Plaintiff has successfully alleged facts that plausibly support a Title VII retaliation claim. Because NYHRL claims "require the same standard of proof . . . as [claims] brought under Title VII," his NYHRL retaliation claim likewise survives. See id. And because "[f]acts sufficient to sustain a cause of action under [NYHRL §] 296 will support a cause of

---

[6] Section 40-d of the NYCRL is the provision that creates a cause of action based on violation of §40-c. Harty v. Spring Valley Marketplace LLC, No. 15-CV-8190 (NSR), 2017 WL 108062, at *6 n.7 (S.D.N.Y. Jan. 9, 2017).

action under [§] 40-c of the [NYCRL]," Plaintiff has alleged facts sufficient to maintain his NYCRL § 40-c and § 40-d claims. See Hyman, 2017 WL 1194231, at *10.

Moreover, unlike under Title VII, a plaintiff's supervisor or co-worker who "actually participates in the conduct giving rise to the discrimination" may be individually liable under the NYHRL. Feingold v. New York, 366 F.3d 138, 157-58 (2d Cir. 2004) (quoting Tomka, 66 F.3d at 1317 (alteration adopted)). However, Plaintiff has failed to allege that any of the Individual Defendants actually participated in the alleged discriminatory conduct. Plaintiff stated that FDNY EEO failed to investigate his discrimination claim (id. ¶¶ 145-46), and that he was informed he would not be receiving the medal he had been recommended to receive (id. ¶ 173), but has provided no information about how any of the Individual Defendants were personally involved in the conduct underlying those allegations. He has therefore failed to plead sufficient facts to support his NYHRL § 296 and NYCRL § 40-c & 40-d claims of retaliation against the Individual Defendants.

For the foregoing reasons, Defendants' motion to dismiss the NYHRL Article 15 and NYHRL § 40-c & 40-d claims of retaliation is DENIED as to the City and FDNY and GRANTED as to the Individual Defendants.

## J.    NYCHRL (Counts Nine, Seventeen, and Twenty)

Plaintiff has named the City, FDNY, and the Individual Defendants as Defendants in Count Nine. (Am. Compl. ¶¶ 265-73.) He has named the City, FDNY, and the Supervisory Defendants as Defendants in Counts Seventeen and Twenty. (Am. Compl. ¶¶ 320-24, 344-48.)

### 1.    Legal Standard

The NYCHRL requires a separate analysis from Title VII claims. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) ("[E]ven if the challenged conduct is not actionable under federal and state law, federal courts must consider separately

whether it is actionable under the broader New York City standards.") Section 8-107(a) of the NYCHRL states that it is an "unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived age, race, . . . gender, [or] disability . . . [t]o discriminate against such person in . . . conditions or privileges of employment. N.Y.C. Admin. Code § 8-107. The employer's actions need not be "severe or pervasive" to amount to an "adverse employment action," as they must for federal and state claims. See Mihalik, 715 F.3d at 113-14. Because of the "uniquely broad and remedial purposes of the [NYCHRL]" the court must focus on "unequal treatment based on gender." Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 40 (N.Y. App. Div. 2009). A similar inquiry applies based on other identified characteristics. See N.Y.C. Admin. Code § 8-107.

"Section 8–107(7) of the NYCHRL prohibits employers from 'retaliating or discriminating in any manner against any person because such person has opposed any practice forbidden under this chapter.'" Mihalik, 715 F.3d at 112 (quoting N.Y.C. Admin. Code § 8-107(7) (alterations adopted)). To state a NYCHRL retaliation claim, a plaintiff has to show he took "action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Reed v. Nike, Inc., No. 17-CV-7575 (LGS), 2019 WL 2327519, at *3 (S.D.N.Y. May 31, 2019) (citing Mihalik, 715 F.3d at 112).

A plaintiff must show a causal connection between the employer's conduct and the plaintiff's opposition to employer's discrimination. Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 791 (N.Y. App. Div. 2013). Temporal proximity can, on its own, establish the requisite causation.[7] Reed, 2019 WL 2327519, at *4; see also Kaplan v. N.Y.C. Dep't of Health

---

[7] "Some courts have held that temporal proximity does not, in itself, establish causation." Reed v. Nike, Inc., No. 17-CV-7575 (LGS), 2019 WL 2327519, at *4 (S.D.N.Y. May 31, 2019). But those cases are distinguishable from

& Mental Hygiene, 38 N.Y.S.3d 563, 566 (N.Y. App. Div. 2016) (explaining that alleging that an adverse employment action occurred just two weeks after the employee engaged in a protected activity sufficiently alleged causation); Feliciano v. City of New York, No. 14-CV-6751 (PAE), 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (saying that "mere temporal proximity" on its own can demonstrate causation when the protected activity and adverse employment action happen "very close together" (quotation marks and citation omitted)).

2.    Application

Defendants claim that, even under the NYCHRL, Plaintiff has failed to allege that their "conduct [wa]s caused by a discriminatory motive." (Mem. at 11 n.4.) Plaintiff answers that he was "treated less well than other employees" because of his gender. (Opp'n at 11 (quoting Mihalik, 715 F.3d at 110).) He contends that the fact that FDNY investigated Arroyo's claim of sexual harassment and ignored his complaints indicate that he was treated differently because of his race, gender, and disability.

Plaintiff has failed to allege facts that could plausibly support a claim that he was "treated less well than other employees" because of his gender, race, or disability. See Mihalik, 715 F.3d at 110. Plaintiff's and Arroyo's situations are not analogous. Arroyo reported harassment that Plaintiff allegedly directed at her. (See Am. Compl. ¶ 132.) FDNY was obligated to investigate this claim. See Malik, 202 F.3d at 105 ("[A]n employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to

_____

this one. For example, in Forrester v. Corizon Health, Inc., the Second Circuit said, "evidence of temporal proximity alone is not enough to demonstrate retaliation under the NYCHRL," 752 F. App'x 64, 66 (2d Cir. 2018) (summary order). But Forrester was a non-precedential summary order, and this statement was based on Chen v. City Univ. of New York, an earlier Second Circuit case. 805 F.3d 59 (2d Cir. 2015). In Chen, temporal proximity did not establish causation when an assistant professor was dismissed after engaging in a protected activity because the university made employment decisions for all of its assistant professors at that time. Id. at 72. The case before the court involves no such universal staffing decision nor FDNY-wide decisions to reduce or remove recommended awarded medals. See Reed, 2019 WL 2327519, at *4 (observing that "Chen cannot fairly be read to preclude categorically a plaintiff from establishing causation based on temporal proximity").

30

investigate may allow a jury to impose liability on the employer.") In contrast, Plaintiff was reporting something he had heard about through the grapevine, something that the FDNY was not, to the court's knowledge, required to investigate. (Am. Compl. ¶¶ 84-86.) Plaintiff has likewise failed to allege facts that support an inference of employer action "caused by a discriminatory motive"—i.e., an action motivated by Plaintiff's gender, race, or disability. See, e.g., Mihalik, 715 F.3d at 110. Without additional facts, Arroyo's and Plaintiff's complaints are not sufficiently analogous to plausibly establish differing treatment based on gender, race, or disability. Plaintiff has therefore failed to support his NYCHRL employment discrimination claims.

However, Plaintiff has made out a NYCHRL claim sufficient to survive a motion to dismiss because he has alleged facts that make a plausible retaliation claim under NYCHRL § 8-107(7). For the same reasons for which Plaintiff's Title VII retaliation claim survives, Plaintiff has also successfully pled facts indicating that Defendants "engaged in conduct that was reasonably likely to deter a person from" engaging in opposition to discrimination. Mihalik, 715 F.3d at 112. Like the Title VII retaliation claim, the causation element of Plaintiff's NYCHRL retaliation claim is plausibly alleged due to the proximity of the removal of Plaintiff's awarded medal and his filing of the instant case. However, Plaintiff has not pleaded facts demonstrating any individual involvement of the Individual Defendants such that they could be liable for retaliation under NYCHRL.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's NYCHRL claim is DENIED as to the City and FDNY and GRANTED as to the Individual Defendants.

31

### K.     First Amendment Claims (Counts Ten and Eleven)

Plaintiff brings free speech retaliation and prior restraint claims against the City, FDNY, and the Supervisory Defendants pursuant to the First Amendment. (Am. Compl. ¶¶ 274-95.)

Plaintiff alleges that his report of Arroyo's sexual activities and his complaint to the EEOC are protected by the First Amendment and that he has successfully alleged retaliation and prior restraint causes of action. (Am. Compl. ¶¶ 238, 249.) However, First Amendment protections usually do not apply "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Connick v. Myers, 461 U.S. 138, 147 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." Id. at 147-48. When employees speak out about issues of public concern, that speech is protected by the First Amendment. See Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 124-25 (2d Cir. 2005).

"[W]hen a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern." Konits, 394 F.3d at 125. However, if an employee raises the issue of discrimination to "further his own employment interest," his speech is likely not protected by the First Amendment. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993). In other words, if a "[p]laintiff does not allege that his complaints [about discrimination] focused on anything beyond consequences he personally suffered at the hands of [d]efendants," that speech does not "address a matter of public concern." Wu v. Metro-North Commuter R.R., No. 14-CV-7015 (LTS), 2015 WL 5567043, at *6 (S.D.N.Y. Sept. 22, 2015).

Moreover, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Some factors the court should consider when determining whether the speech in question was pursuant to an employee's official duties are: "the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment." Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 506 (E.D.N.Y. 2011) (quoting Caraccilo v. Vill. of Seneca Falls, 582 F. Supp. 2d 390, 405 (W.D.N.Y. 2008) (quotation marks omitted)).

Defendants claim that Plaintiff's complaint of discrimination to the EEOC and SDHR "concerned purely internal and personal grievances" and did not address matters of public concern. (Mem. at 22.) Defendants state that Plaintiff only knew about Arroyo's alleged actions, and chose to report those actions, because of his role at FDNY and his concern for following internal policies. (Mem. at 22.) Therefore, according to Defendants, Plaintiff's report about Arroyo's alleged activity was "pertaining to [his] official duties" and was not protected by the First Amendment. (Id. (quoting Weintraub v. Bd. of Educ., 489 F. Supp. 2d 209, 221 (E.D.N.Y. 2006)).)

The court agrees that Plaintiff spoke "pursuant to [his] official duties," Frisenda, 775 F. Supp. 2d at 506 (citing Caraccilo, 582 F. Supp. 2d at 405), and about "consequences he personally suffered," Wu, 2015 WL 5567043, at *6, instead of about matters of public concern. Although Plaintiff states that he reported "relentless department-wide gender-based, racial and/or color-based discriminatory conduct by the Defendants" by filing his complaint with the EEOC (Am. Compl. ¶ 239), he does not provide any indication that he made this complaint for any

33

reason other than to remedy the alleged discrimination against him personally, nor that his complaint even mentioned "anything beyond consequences he personally suffered at the hands of [d]efendants." See Wu, 2015 WL 5567043, at *6.

Defendants' motion to dismiss Plaintiff's First Amendment claims is therefore GRANTED.

### L.     Breach of Contract (Count Fourteen)

Defendant has named the City, FDNY, DeBlasio, and Nigro as defendants in his breach of contract claim. (Am. Compl. ¶¶ 305-09.) Under New York law, a breach of contract claim requires: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." Swan Media Grp., Inc. v. Staub, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004)). "Moreover, New York law and the Twombly–Iqbal standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015). "Otherwise, the complaint must be dismissed." Id. (citations omitted).

The court must "accept the factual allegations of a complaint as true and draw all inferences in the pleader's favor, [but] it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" Swan Media Grp., 841 F. Supp. 2d at 807 (citing Iqbal, 556 U.S. at 678). Here, Plaintiff alleges that there were "oral and written contracts with Defendants . . . including [] those contracts formed on the basis of agreements comprised of collective bargaining agreements, employee manuals and custom and practice." (Am. Compl. ¶ 306.) But those allegations are legal conclusions and the court is not bound to accept them as true. See

Iqbal, 556 U.S. at 680. Moreover, Plaintiff has not described any of the terms of the alleged contract, much less "the specific terms of the contract that a defendant has breached." See Spinelli, 96 F. Supp. 3d at 131. Therefore, his claims must be dismissed. See id.

Even if the court did accept that Plaintiff is covered by a collective bargaining agreement, that would not provide standing for him to sue for breach of contract because an individual plaintiff usually does not have standing to sue on a collective bargaining agreement; rather, he can enforce a collective bargaining agreement only through the union. Hunt v. Klein, No. 10-CV-02778 (GBD), 2011 WL 651876, at *2 (S.D.N.Y. Feb. 10, 2011), aff'd, 476 F. App'x 889 (2d Cir. 2012). "[O]nly when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer." Id. at *2 (citing Bd. of Educ. v. Ambach, 517 N.E.2d 509, 511 (N.Y. 1987)). Plaintiff has not alleged any facts indicating such a failure on a union's part here, and so does not have standing to sue on the basis of any collective bargaining agreement.

Therefore, Defendants' motion to dismiss Plaintiff's breach of contract claim is GRANTED.

### M.    Tortious Interference with a Contract (Count Twelve)

Plaintiff brings a claim of tortious interference with contract against Arroyo and Russo. (Am. Compl. ¶¶ 296-99.) In order to state a claim for tortious interference with contract under New York law, a plaintiff must show: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." Albany Molecular Research, Inc. v. Schloemer, No. 10-CV-210, 2010 WL 5168890,

at *6 (N.D.N.Y. Dec. 14, 2010) (citing Kronos, Inc. v. AVX Corp., 612 N.E.2d 289, 292 (N.Y. 1993)).

As noted above, Plaintiff has failed to sufficiently allege the existence of a contract. This claim thus cannot go forward, and the court GRANTS Defendants' motion to dismiss Plaintiff's tortious interference with contract claim.

### N.  Intentional Infliction of Emotional Distress (Count Thirteen)

Plaintiff names only Defendants Leonard, Russo, and Arroyo in his intentional infliction of emotional distress claim. (Am. Compl. ¶¶ 301-04.) Defendants argue that the claims against the individual Defendants are invalid because the City of New York is required to indemnify the named individual Defendants, and Plaintiff failed to file notice of claim against individual Defendants within ninety days, as required under state law to proceed with a tort claim against City employees.[8] (Mem. at 26.)

### 1.  Legal Standard

Under New York law, a plaintiff claiming intentional infliction of emotional distress must plead: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). "[A] claim for intentional infliction of emotional distress must satisfy an 'exceedingly high legal standard.'" DiRuzza v. Lanza, 685 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting Chanko v. Am. Broad. Cos. Inc., 49 N.E.3d 1171, 1179 (N.Y. 2016)). Liability for intentional infliction of emotional distress

---

[8] Defendants also contend that intentional infliction of emotional distress claims are barred for public policy reasons against the City of New York and FDNY because they are "governmental entit[ies.]" (Mem. at 26.) This is irrelevant because these are not Defendants named in the claim.

arises "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Chanko, 49 N.E.3d at 1178 (citing Howell v. N.Y. Post Co., Inc., 612 N.E.2d 699, 702 (N.Y. 1993)). Even "[a]ctions 'likely [to] be considered reprehensible by most people' are not sufficient." DiRuzza, 685 F. App'x at 37 (citing Chanko, 49 N.E.3d at 1179).

Moreover, to bring civil tort action against an employee of New York City, a Plaintiff must file a "notice of a claim . . . upon the city . . . within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-k. Section 50-e specifies when and how notice must be served. See generally N.Y. Gen. Mun. Law § 50-e. However, "service of a notice of claim upon the corporation is 'required only if the [city] has a statutory obligation to indemnify [the employee].'" Hardy, 748 F. App'x at 381 (emphasis in original) (citing N.Y. Gen. Mun. Law § 50-e(1)(b)). And "[a] municipality is required to indemnify its employee only if his liability arose from conduct 'within the scope of his employment.'" Id. (citing Jean-Laurent v. Hennessy, No. 05-CV-1155 (JFB), 2008 WL 3049875, at *19 (E.D.N.Y. Aug. 1, 2008)). To be indemnified, the employee must not have been acting "'in violation of any rule or regulation of his agency' and the injury [must not have resulted] from 'intentional wrongdoing or recklessness on the part of the employee.'" Hardy, 748 F. App'x at 381-82 (citing Jean-Laurent, 2008 WL 3049875, at *19).

2.    Application

Plaintiff has not alleged facts indicating that Defendants Leonard, Russo, and Arroyo acted outside the scope of their employment, in violation of a rule, or in any way that constituted wrongdoing. Thus, based on the allegations in the Amended Complaint, these three Defendants

were acting "within the scope of [their] employment" and were not "in violation of" rules or regulations, nor were they engaging in "intentional wrongdoing." Hardy, 748 F. App'x at 381-82 (citing Jean-Laurent, 2008 WL 3049875, at *19). Plaintiff was therefore required to serve a notice of claim on the city in order to bring an intentional infliction of emotional distress claim against named Defendants. See Jean-Laurent, 2008 WL 3049875, at *19. Plaintiff has not alleged that he did so, nor has he provided any response to Defendants' arguments on this issue.

In any event, no facts alleged in the Amended Complaint rise to the level of "outrageous[ness]" required to sustain an intentional infliction of emotional distress claim. Plaintiff alleges that Defendants Arroyo and Russo "set out on a willful, malicious, extreme and outrageous course of action to intentionally cause Plaintiff severe emotional distress." (Am. Compl. ¶ 302.) These allegations are conclusory and directly mirror elements of an intentional infliction of emotional distress claim. See Bender, 78 F.3d at 790. The court is therefore not bound to accept them as true, see Swan Media Grp., 841 F. Supp. 2d at 807 (citing Iqbal, 556 U.S. at 678), and finds that Plaintiff has failed to allege any facts supporting his claim of intentional infliction of emotional distress.

For these reasons, the Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim is GRANTED.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion is denied with respect to the following claims: (1) Title VII retaliation against FDNY and the City, (2) NYHRL and NYCRL retaliation against FDNY and the City, and (3) NYCHRL retaliation claim against FDNY and the City. The Clerk of Court

is respectfully DIRECTED to terminate Defendants Arroyo, Russo, Leonard, de Blasio, and Nigro from the case.

The parties are DIRECTED to contact the chambers of Magistrate Judge Ramon E. Reyes regarding the next step in this case.

SO ORDERED.

Dated: Brooklyn, New York
       August 8 , 2019

NICHOLAS G. GARAUFIS
United States District Judge