UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────

MICHAEL MCGRATH,

               Plaintiff,

      -against-

MARILYN ARROYO, STEVEN RUSSO, JAMES LEONARD, DANIEL NIGRO, MAYOR BILL DEBLASIO, THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, and THE CITY OF NEW YORK,

               Defendants.
───────────────────────────────

**MEMORANDUM & ORDER**
**17-CV-1461 (NGG) (JRC)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Michael McGrath ("Plaintiff") seeks reconsideration of this court's January 3, 2024 ECF Order ("ECF Order") denying Plaintiff's motion to file a second amended complaint. (Not. of Mot. for Recon. (Dkt. 113); Mem. in Supp. of Mot. for Recon. ("Mot. for Recon.") (Dkt. 114).) Plaintiff contends that this court erred in denying his motion to amend on futility grounds without discussion of his disability claims.

Plaintiff seeks reconsideration of this court's ECF Order denying Plaintiff leave to file a second amended complaint. (*See generally* Mot. for Recon.) On August 8, 2019, this court issued a Memorandum & Order ("M&O") dismissing certain of Plaintiff's claims against the Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). (M&O (Dkt. 47).)[1] Following discovery, Plaintiff sought leave to file a motion to amend his complaint to add factual allegations "based on recently obtained deposition

───────────
[1] The court assumes familiarity with the factual and procedural background of this case, which is set forth in greater detail in the M&O. *See McGrath v. Arroyo*, No. 17-CV-1461 (NGG), 2019 WL 3754459, at *1 (E.D.N.Y. Aug. 8, 2019).

1

testimony" in order to reinstate the following: (1) Commissioner Daniel Nigro who was previously a defendant in the suit; (2) Plaintiff's cause of action against all Defendants pursuant to the anti-discrimination provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and (3) several employment discrimination claims that were also previously dismissed against Commissioner Nigro and all other Defendants.[2] (Pl's Request for Mot. to Amend (Dkt. 95) at 1.) This court granted leave to file the motion on September 15, 2023 (*see* Min. Entry dated 9/15/2023), and upon review of the parties' arguments, denied the motion to file a second amended complaint as futile on January 3, 2024. (*See* ECF Order.)

The standard for a motion for reconsideration is "strict." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such motions are generally denied unless the moving party can establish: "(1) that the court overlooked controlling decisions or data; (2) that there has been a change in decisions or data; (3) that new evidence has become available; or (4) that reconsideration is necessary to correct a clear error or prevent manifest injustice." *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, No. 17-CV-6255 (NGG), 2019 WL 6134164, at *1 (E.D.N.Y. Nov. 19, 2019). "Under Local Rule 6.3, which governs motions for reconsideration, the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003); *see United States v. One Etched Ivory Tusk of Afr. Elephant*, No. 10-CV-308 (NGG), 2012

---

[2] Specifically, Plaintiff seeks to reinstate his (1) Title VII employment discrimination claim; (2) Title VII hostile work environment; (3) Title VII constructive discharge claim; (4) discrimination claim under the New York Human Rights Law ("NYHRL"); and (5) discrimination claim under the New York City Human Rights Law ("NYCHRL"). (Pl's Request for Mot. to Amend at 1.)

WL 4076160, at *1 (E.D.N.Y. Aug. 27, 2012). Courts narrowly construe and strictly apply these principles to avoid "repetitive arguments on issues that have already been considered fully by the court." *Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 958 F. Supp. 2d 399, 402 (E.D.N.Y. 2013).

Plaintiff argues that reconsideration of this court's ECF Order is warranted because this court erred in holding that Plaintiff's amendments would be futile without discussing in detail its reasoning or making mention of his disability claims. (Mot. for Recon. at 1.) Specifically, Plaintiff argues that he will suffer manifest injustice by not being able to prosecute well-pleaded claims in light of the new testimony from Commissioner Nigro and others stating that white men are not protected by the FDNY and that individuals with disabilities seeking pensions are discriminated against because of their disabilities. (*Id.* at 2-4.) The court will first review the proposed amendments, and then address Plaintiff's arguments as they related to his employment discrimination claims and disability discrimination claim.

Plaintiff's proposed Second Amended Complaint adds six new paragraphs of factual allegations that are of relevance here. (*See* Proposed SAC (Dkt. 107-5) ¶¶ 203-08.) All of these allegations were admissions by FDNY employees made during depositions in this matter. (*Id.*) Specifically, Commissioner Nigro testified that the FDNY EEO office did not investigate Plaintiff's complaint because Plaintiff, as a white male, did not "fall under any protected category class that they would investigate." (*Id.* ¶ 204.) In response to being asked what his understanding of a protected status was, FDNY Deputy Chief James DiDomenico testified that gender, race, and disability would all be considered protected for EEO purposes, but that white people are not protected. (*Id.* ¶ 206.) Regarding disability pensions, FDNY Associate Disciplinary Counsel, Joseph Pallazzolo, testified that when he first started working with the Fire Department, his supervisors informed him

3

that if a pension hold is placed while an investigation is occurring, "I don't know what the basis is for it, I just know that that's what's done." (*Id.* ¶ 207.) Similarly, FDNY Assistant Commissioner of the Bureau of Investigations and Trials, Robert Wallace, testified that while not a regulation, in practice, if a firefighter or EMT sought to retire through the "normal retirement process," FDNY would have 30 days to "effectuate any charges or discipline." (*Id.* ¶ 208.) However, FDNY could "place a hold on disability applications, and did as a standard operating procedure." (*Id.*)

With a summary of the new allegations in mind, the court now turns to the viability of Plaintiff's employment discrimination claims. As discussed in the M&O, the court found that Plaintiff's transfer to the Queens Borough Command constituted an adverse employment action for purposes of his Title VII discrimination claim. (M&O at 11-12.)[3] However, the court held that because Plaintiff raised no allegations indicating that this transfer was motivated by his race or gender, Plaintiff's Title VII employment discrimination claim must be dismissed. (*Id.* at 14-15.)

Plaintiff's new allegations do not change this court's reasoned analysis with respect to his Title VII employment discrimination claim. Notably, this court held that the fact that FDNY may have deviated from its regular procedures when investigating Plaintiff as compared to Arroyo, Plaintiff did not allege facts demonstrating how FDNY's deviations were related to his transfer. (M&O at 14.) While the proposed allegations do concern FDNY's "policy"

---

[3] This court also held that the investigation of Defendant Arroyo's sexual harassment claim and Plaintiff not being awarded his recommended medal were not adverse actions for purposes of Title VII. (*Id.* at 12-13.) As the proposed amendments do not add facts surrounding Arroyo's investigation or Plaintiff's medal, the court does not discuss its prior findings.

or lack thereof, Plaintiff does not even attempt to resolve the disconnect this court previously called out, namely, how the FDNY's policies or procedures relate to Plaintiff's transfer.

To the extent Plaintiff now alleges that the Defendants' failure to investigate his complaint constitutes an adverse action, Defendants are correct that an employer's failure to investigate an employee's claim does not automatically create an adverse employment action for purposes of stating a *prima facie* case of employment discrimination. (Defs' Opp. to Mot. to Amend (Dkt. 109) at 11 (citing *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014))); *see Petyan v. New York City L. Dep't*, No. 14-CV-1434 (GBD), 2015 WL 1855961, at *11 (S.D.N.Y. Apr. 23, 2015), *report and recommendation adopted*, No. 14-CV-1434 (GB), 2015 WL 4104841 (S.D.N.Y. July 2, 2015) ("Even assuming that the investigation was insufficient, such conduct cannot be characterized as an adverse employment action."); *Hayes v. Kerik*, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006) (dismissing claim based on failure to investigate); *cf. Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir.2010) (holding in retaliation context that "[a]n employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint").

And even if Defendants' failure to investigate were considered an adverse action, Defendants have put forth additional evidence exchanged in discovery purporting to show that Defendants had a legitimate, non-discriminatory purpose for not investigating; it was their policy not to investigate EEO complaints where, as here, the complainant chose to file a similar complaint with an agency outside of the FDNY. (Defs' Opp. to Mot. to Amend at 14-

15).[4] Because Plaintiff does not attempt to address this point or otherwise assert that the policy is pretextual, the court's holding remains the same—his employment discrimination claims fail.[5]

This court also dismissed Plaintiff's disability discrimination claim because Plaintiff failed to allege facts supporting "even a minimal inference of discrimination motivated by Plaintiff's disability." (M&O at 27.) This court noted that Plaintiff argued his disability pension was denied because of the "contrived charge and ongoing extreme prejudice and biased investigation against him," not because of any disability that Plaintiff suffered. (*Id.* at 26.) Again, the new allegations do not alter this holding. "[T]he *sine qua non* of an ADA claim is that the plaintiff was treated differently 'because of' his impairment." *Dedyo v. Baker Eng'g New York, Inc.*, No. 96-CV-7152 (LBS), 1998 WL 9376, at *11 (S.D.N.Y. Jan. 13, 1998); *see also Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (setting out the factors required to establish a *prima facie* discrimination claim under the ADA). Nowhere in the SAC does Plaintiff allege that

---

[4] In employment discrimination cases, courts use the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Following a plaintiff's *prima facie* showing of discrimination, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action, and if satisfied, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the non-discriminatory reason was actually a pretext for discrimination. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 431 (S.D.N.Y. 2023).

[5] The proposed allegations similarly do not change this court's analysis with respect to Plaintiff's hostile work environment, constructive discharge, NYHRL, or NYCHRL discrimination claims. Notably, this court dismissed the hostile work environment claim (and related constructive discharge claim) based on facts that had nothing to do with FDNY's purported procedures at all, but rather whether the harassment suffered by Plaintiff amounted to a pervasive hostile work environment. Because Plaintiff does not include additional facts on this point, those discrimination claims cannot be reinstated.

FDNY or the Pension Medical Board withheld his disability pension *because of* his disability, rather he alleges they did so in retaliation for lodging a complaint and undergoing an investigation. (*See* Proposed SAC ¶¶ 176-183, 207-08.) These assertions are more properly suited for his operative retaliation claim; they cannot, however, sustain a claim under the ADA. *See Dedyo*, 1998 WL 9376, at *12 ("[A] simple denial of entitlement under a disability plan does not state a claim under the ADA. Congress did not intend to federalize all claims of improper withholding of disability benefits, and we decline to adopt a rule that would compel that result."). Moreover, Plaintiff's assertion that Defendants were hostile toward Plaintiff's disability is alleged without any supporting facts showing the same. (*See* Proposed SAC ¶ 265.) As Plaintiff has failed to point to "any controlling law or facts which would justify reconsideration" his disability discrimination claim remains dismissed. *Akkad v. City of New York*, No. 20-CV-4152 (AKH), 2021 WL 6621453, at *2 (S.D.N.Y. Mar. 22, 2021).

Because the proposed amendments do not provide any further support for the dismissed employment discrimination claims or Plaintiff's claim of discrimination based on disability, the court need not disturb its prior ruling dismissing Commissioner Nigro. Thus, the SAC does not contain sufficient factual allegations to reinstate Plaintiff's claims. As Plaintiff's amendments would be futile, his motion for reconsideration is therefore DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         February 8, 2024

                                        s/Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge

7